UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Si T.P., | Case No. 26-cv-1445 (ECT/DJF) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| Kristi Noem, *Secretary, Department of Homeland Security*; Todd M. Lyons, *Acting Director, Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, | |
| Respondents. | |

This matter is before the Court on Petitioner Si T.P.'s[1] *Petition for Writ of Habeas Corpus* (ECF No. 1) ("Petition"). Si seeks an order directing Respondents to release him immediately. As discussed below, the Court finds the government failed to follow its own regulations in detaining Si and recommends the Petition be granted on that ground.

## BACKGROUND

Si is a citizen of Vietnam who entered the United States on April 6, 1992 as a lawful permanent resident. (ECF No. 7 at 2.) At the time, he was 14 years old. (ECF No. 1 at 1.) He immigrated with his mother, "who worked for the U.S. government and had children born after [Si] with a U.S. citizen." (*Id.*) On July 17, 1998, Si was convicted of felony first degree aggravated robbery. *See* Docket, *State of Minnesota v. Pham*, No. 62-K2-98-000631 (Minn. Dist. Ct.). Because of this conviction, an immigration judge entered an order of removal for Si on September 13, 1999. (ECF No. 1 at 10; ECF No. 6-1 at 1.) It is unclear from the record when Si completed his term of

imprisonment, but on January 9, 2003, Immigration and Naturalization Services[2] ("INS") took Si into custody to deport him to Vietnam.  (ECF No. 7 at 2.)

INS detained Si for several months but was unable to deport him.  (ECF No. 1 at 10; ECF No. 7 at 2.)  Given Si's Vietnamese citizenship, this was not unusual.  The United States and Vietnam normalized diplomatic relations in 1995, *see Nguyen v. Hyde*, 788 F. Supp. 3d 144, 147 (D. Mass June 20, 2025),[3] but it was not until 2008 that the nations reached a bilateral agreement concerning the repatriation of Vietnamese citizens, *see* Repatriation Agreement Between the United States of America and Vietnam, Mar. 22, 2008, T.I.A.S. No. 08-322, 2008 WL 10617635.  And even under that agreement, the United States government would not have been able to deport Si because the agreement only allowed for repatriation of Vietnamese citizens who arrived in the United States after July 12, 1995.  *Id.* at *2.

Immigration and Customs Enforcement ("ICE") released Si on supervised release on May 22, 2003, after detaining him for over four months.  (ECF No. 7 at 2.)  After his release, Si was convicted of a litany of criminal offenses, including: felony fifth degree possession of cocaine in 2007; ten shoplifting convictions in 2024; and in 2025, misdemeanor domestic assault, misdemeanor violation of a domestic abuse no contact order, and misdemeanor theft.  (ECF No. 1 at 9-10, listing cases.)  Despite these convictions, ICE has never asked Si to fill out an application for a travel document or a passport application to facilitate his future return to Vietnam, or called him into a

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in immigration matters.

[2] Immigration and Naturalization Services has since been dissolved and its functions under the regulations at issue in this matter are now performed by Immigration and Customs Enforcement.  *See Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 n.5 (D. Minn. Sept. 3, 2025).

[3] *U.S. Relations With Vietnam: Bilateral Relations Fact Sheet*, State Dep't (Jan. 10, 2025), https://2021-2025.state.gov/bureau-of-east-asian-and-pacific-affairs/releases/2025/01/u-s-relations-with-vietnam/.

field office during his extended period of supervision. (*Id.* at 10.)

On December 10, 2025, ICE arrested Si outside his home as he was going to get a cup of coffee without producing a warrant for his arrest. (*Id.* at 3; ECF No. 7 at 2.) Six days after ICE arrested and detained Si, the agency notified him that it was revoking his supervised release. (ECF No. 7 at 2; ECF No. 6-2 at 1-2.) The revocation notice stated the following:

> This letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.
>
> On April 6, 1992, you were ordered removed to Laos by an authorized U.S. DHS/DOJ official and you are subject to an administratively final order of removal. On May 22, 2003, ICE released you from custody on an Order of Supervision. You have not been compliant with the terms of your release. Additionally, due to changes in circumstances, ICE will pursue new efforts to remove you to Laos.
>
> Based on the above, and pursuant to 8 C.F.R. § 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for revocation. You may submit any evidence or information you wish to be reviewed in support of your release. If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

(ECF No. 6-2 at 1.)

The day ICE served the notice, an immigration officer conducted Si's informal interview. (ECF No. 6-2 at 3.) The evidentiary record does not include a summary of the interview, but at some point, Si said, "Forget it. I'll go back." (*Id.*) On January 15, 2026, ICE requested a travel document for Si. (ECF No. 7 at 2.) That request is still pending. (*Id.*) In the meantime, Si remains detained at the Freeborn County Jail in Albert Lea, Minnesota. (*Id.* at 2-3.)

On February 15, 2026, Si filed the Petition now before the Court. (ECF No. 1.) The Petition requests an order for Si's immediate release based on Respondents' alleged violations of: (1.) 8 U.S.C. § 1231; (2.) Fifth Amendment substantive due process; (3.) Fifth Amendment procedural due

process; (4.) the Fourth Amendment prohibition against unlawful search and seizure; and (5.) the *Accardi* doctrine[4]. (*Id.* at 14-18.)

## DISCUSSION

### I. Legal Standards

The general federal habeas statute empowers federal courts to release civilly detained individuals when that detention violates the Constitution or federal law. 28 U.S.C. § 2241; *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025). It is well-established that federal regulations are federal law. *Resolution Trust Corp. v. Home Sav. of America*, 946 F.2d 93, 96 (8th Cir. 1991); *Velocity Express Corp. v. Bayview Capital Partners, LP*, No. 02-cv-521 (RHK/AJB), 2002 WL 980502, at *2 n.3 (D. Minn. May 9, 2002). It therefore follows that a habeas petitioner may be released when his civil detention arises from violations of federal regulations. *See In re United States*, 197 F.3d 310, 315 (8th Cir. 1999) (citing *United States ex re. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954)).

### II. The Relevant Statutory and Regulatory Framework

Respondents argue Si's detention is authorized under 8 U.S.C. § 1231(a)(2). (ECF No. 5 at 3.) Section 1231(a)(2) provides that the government may detain a noncitizen who is subject to an order of removal. But the length of that detention is subject to various limitations. With a few narrow exceptions not relevant here, a noncitizen's detention is limited to a 90-day "removal period." *Id.* "The removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is

---

[4] "[T]he *Accardi* doctrine bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights." *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001).

detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."[5]  8 U.S.C. § 1231(a)(3).

Since at least November 14, 2001, the Department of Justice and the Department of Homeland Security have maintained the same regulations concerning procedures for the revocation of supervised release under Section 1231(a)(3). *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967, 56979 (Nov. 14, 2001) (codified at 8 C.F.R. § 241.13(i)). Those regulations state that revocation may occur for one of two reasons: (1.) violation of conditions of release; or (2.) "on account of changed circumstances," ICE determines there is a "a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i). If ICE decides to revoke a noncitizen's supervised release, the noncitizen "will be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3). Once the noncitizen is in custody, ICE must promptly conduct an "initial informal interview … to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification. The [noncitizen] may submit evidence or information that he or she believes shows there is no significant likelihood he or she be [sic] removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* ICE then must conduct a revocation custody review that includes "an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.*

---

[5] Because this language predates the Department of Homeland Security, courts now construe the statute's reference to the Attorney General as referring to the Secretary of the Department of Homeland Security as well. *See Silva v. United States*, 866 F.3d 938, 940 n.2 (8th Cir. 2017).

**III.   Analysis**

Respondents' detention of Si involved a series of unforced blunders that plainly violate federal law. Though Si raises several independent grounds for his release, the Court concludes that the Petition ought to be granted because the government failed to follow its own regulations in detaining him.[6]

**A.   Improper Notice**

The first such failure occurred when Respondents arrested Si six days *before* his supervised release was revoked, without producing a warrant stating the grounds for his arrest. (ECF No. 1 at 3; ECF No. 7 at 2.) Respondents do not address this fact in their response to the Petition and proffer no legal basis for arresting him without a warrant and then continuing to detain him for nearly a week before his supervised release was revoked. *See M.S.L. v. Bostock*, No. 6:25-cv-1204 (AA), 2025 WL 2430267, at *10, 12 (D. Or. Aug. 21, 2025) (concluding two-day delay between arrest and service of notice of revocation violated federal regulations). Respondents' failure to produce a warrant or any legal authorization to detain Si at the time of his arrest raises the possibility that they arrested him for arbitrary, discriminatory or other unlawful reasons and then revoked his supervised release later to justify it. (*See* ECF No. 1 at 3, reporting arbitrary arrest of elderly Hmong man who was a naturalized U.S. citizen and allegations of "federal law enforcement officers going door-to-door asking people where the Asian people live").

The next set of errors occurred when Respondents notified Si of the reasons for the revocation. The notice itself contains numerous factual inaccuracies, including that: (1.) Si was ordered removed to Laos (*see* ECF No. 6-1, stating that an immigration judge ordered him removed

---

[6] The Court thus does not consider the other grounds asserted in the Petition. *See Yee S. v. Bondi*, 806 F. Supp. 3d 894, 898 n.5 (D. Minn. Oct. 9, 2025).

to Vietnam); (2.) Si was ordered removed on April 6, 1992 (*see id.*, stating that the immigration judge ordered him removed on September 13, 1999); and (3.) ICE intended to pursue "new" efforts to remove Si to "Laos" (there is no evidence in the record that ICE ever attempted to remove Si to Laos).

In addition to these inaccuracies, the notice is unduly vague. It simply states, "You have not been compliant with the terms of your release. Additionally, due to changed circumstances, ICE will pursue new efforts to remove you to Laos." (ECF No. 6-2 at 1.) But the notice includes no explanation of how Si was noncompliant or what circumstances allegedly changed after his release. (*See id.*) It is instead a boilerplate form letter, apparently cut-and-pasted unartfully from another form letter. Though the notice recites the regulatory framework for revocation under 8 C.F.R. § 241.13(i), it provides no explanation at all of the factual basis for revocation in Si's particular case.

Respondents' failure to notify Si of the reasons for his revocation is significant because it prevented him from challenging the revocation. A noncitizen must be apprised of the specific reasons for revoking his supervised release so that he can present rebuttal evidence and argument at his informal interview. 8 C.F.R. § 241.13(i)(3); *see also Sarail A.*, 803 F. Supp. 3d at 781 ("notification 'of the reasons for revocation' requires ICE to do more than state that circumstances have changed."). Without adequate specificity, these notices are meaningless formalities. Respondents' failure to follow their own regulations in arresting Si and notifying him of the revocation deprived him of an opportunity to mount a defense, and that deprivation establishes grounds to release him. *See Sarail A.*, 803 F. Supp. 3d at 781-84 (granting habeas petition based, in part, on government's failure to provide adequate notice of the reasons for revocation); *Dusan C. v. Bondi*, No. 26-cv-620 (JRT/ECW), 2026 WL 458128, at *4 (D. Minn. Feb. 13, 2026) (same); *Xayakesone v. Noem*, No. 25-cv-2995 (JES/BJW), 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19,

2025) (same).

## B. Inadequate Grounds

Not only was the revocation process unlawful, but the reasons Respondents proffer for the revocation are also inadequate. Because nothing in Si's revocation notice explains Respondents' position, it is documented in the court record only in their response to the Petition (ECF No. 5). Reading Respondents' memorandum liberally, the Court identifies only one potential justification for the revocation of Si's supervised release: that "there exists a significant likelihood of Petitioner's removal in the reasonably foreseeable future." (ECF No. 5 at 4.) The applicable regulation, 8 C.F.R. § 241.13, requires ICE to identify "changed circumstances" leading it to conclude that a noncitizen on supervised release may be removed in the reasonably foreseeable future. Respondents identify just one possible basis to believe that changed circumstances existed: the recent successful deportation of another Vietnamese immigrant. (ECF No. 5 at 6, citing ECF No. 7 at 2, "Vietnam has recently been issuing travel document [sic] to ICE detainees for repatriation. In one instance, a travel document request for Vietnam was sent … on October 23, 2025. The travel document was approved and issued on January 23, 2026.".) But this solitary example is inadequate, for several reasons.

First, the repatriation was not approved until January 23, 2026 (ECF No. 7 at 2), over a month after Respondents revoked Si's supervised release. This example is thus an impermissible post-hoc rationalization, because ICE officials could not have known about it when they initially seized Si and revoked his supervised release. *See Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) ("It is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action.").

Second, Respondents provide no information about the individual they were able to deport (*see* ECF No. 7 at 2), making it impossible to determine whether the facts in that case materially differ from Si's. There is sound reason to believe the omitted facts might matter. For many decades, the United States and Vietnam did not have any agreement concerning repatriation. When the nations did reach a repatriation agreement in 2008, it was limited to the repatriation of Vietnamese citizens who immigrated to the United States after 1995. Because Si entered the United States in 1992, he could not have been repatriated under that agreement. (*See* ECF No. 7 at 2.) It is unclear if the Vietnamese citizen whom Respondents cite in their example was repatriated pursuant to the 2008 repatriation agreement, which excluded immigrants such as Si.

In evaluating this issue, the Court acknowledges that the United States and Vietnam negotiated a more recent agreement, which theoretically *could* apply to Si. Though Respondents do not rely on it (*see* ECF No. 5), "In 2020, the United States and Vietnam signed a Memorandum of Understanding (the "2020 MOU") regarding Vietnam's acceptance of Vietnamese citizens who have been ordered removed by U.S. competent authority and who [like Si] arrived in the United States before July 12, 1995." *Nguyen*, 788 F. Supp. 3d at 148.[7] But the mere existence of the 2020 MOU does not establish a realistic chance that Si can successfully be repatriated to Vietnam, since it provides Vietnam with total discretion to deny repatriation requests under that agreement, *see Nguyen*, 788 F. Supp. 3d at 151, and there is no evidence in the record that the United States has successfully repatriated any Vietnamese citizen under the 2020 MOU. Therefore, without more information, the Court cannot conclude that the 2020 MOU constitutes evidence of changed

---

[7] Si briefly mentioned the 2020 MOU in his Petition. (ECF No. 1 at 2.) Since the 2020 MOU is discussed in detail in a judicial opinion and is a policy statement by the State Department, the Court may take judicial notice of its details as recounted in *Nguyen*, 788 F. Supp. 3d at 148. *See United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999).

circumstances relevant to Si's case, or that the single repatriation Respondents cite supports their claim. *See Nguyen*, 788 F. Supp. 3d at 151-52.

Finally, even if the person in Respondents' example immigrated to the United States before 1995, Respondents have given the Court no means to evaluate whether the single repatriation they cite is a trend or an outlier, because they do not state how many times they have attempted to repatriate Vietnamese citizens who immigrated to the United before 1995. *See Nguyen*, 788 F. Supp. 3d at 151-52 (concluding that failure to identify how many individuals removed during the past two years were pre-1995 Vietnamese immigrants, like petitioner, means respondents failed to show significant likelihood that petitioner would be removed to Vietnam in reasonably foreseeable future). Under Section 241.13, it is Respondents' burden to prove "changed circumstances." *See Yee S. v. Bondi*, 806 F. Supp. 3d 894, 900 (D. Minn. 2025); *Nguyen*, 788 F. Supp. 3d at 150 n.2; *Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025). For all the aforementioned reasons, it is apparent they have failed to carry that burden.

**C.     Other Arguments**

Most of Respondents' memorandum focuses on Section 1231. (ECF No. 5 at 3.) But they focus on the provisions of the statute that prescribe initial detention of a noncitizen upon the entry of a removal order. They overlook Section 1231(a)(3), which explicitly differentiates supervised release from initial detention and delegates regulatory authority concerning supervised release to the Attorney General.

Respondents' brief response to Petitioner's argument that they violated their own regulations also makes little sense. Respondents contend they did not violate Section 241.13 because the section of that regulation titled "Scope" states that the regulation establishes special review procedures for noncitizens who are subject to a final order of removal and are detained, and "Petitioner was in

custody during the time ICE assessed the likelihood of his removal in the reasonably foreseeable future." (ECF No. 5 at 8.) Si is not arguing that he is not subject to Section 241.13. Rather, he is arguing Respondents failed to abide by the procedures Section 241.13 establishes for revocation of supervised release. Respondents' contention fails to substantively respond to that argument.

Though there may be legitimate grounds to revoke Si's supervised release, in their apparent rush to arrest and detain him, Respondents failed to follow their own legally dictated procedures. As Justice Marshall once wrote, "Our Constitution assures that the law will ultimately prevail, but it also requires that the law be applied in accordance with lawful procedures." *Holtzman v. Schlesinger*, 414 U.S. 1304, 1315 (1973). Respondents must adhere to the regulations they established. The Court therefore recommends that the Petition be granted.

## IV.  Objections

Given the expedited nature of these proceedings, the Court is altering the standard timelines for Respondents to file objections to this Report and Recommendation. *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*.") (emphasis added). Respondents must file any objection to this Report and Recommendation on or before **February 26, 2026**. Si may file a response to any objections on or before **February 27, 2026**.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Si T.P.'s *Petition for Writ of Habeas Corpus* (ECF No. 1) be **GRANTED**;
2. Respondents be ordered to release Petitioner Si T.P. from custody:

      A.      As soon as practicable;

      B.      Inside the State of Minnesota;

      C.      At a safe time and place communicated in advance to counsel; and

      D.      With ***all*** of Petitioner's personal effects in Respondents' possession, such as driver's license, immigration papers, passport, cell phone, and keys.

Dated: February 24, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. For the reasons previously stated, Respondents must file any objection to this Report and Recommendation on or before **February 26, 2026**. Petitioner may file a response to any objections on or before **February 27, 2026**.